| | |
|---|---|
| ALLAN FLETCHER,<br><br>       Plaintiff,<br><br>   v.<br><br>STEPHANIE CLENDENIN, et al.,<br><br>       Defendants. | Case No. 1:22-cv-01150-EPG-PC<br><br>FINDINGS AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE AND GRANT IN PART AND DENY IN PART DEFENDANTS' MOTION TO DISMISS<br><br>(ECF Nos. 12, 14)<br><br>ORDER DIRECTING CLERK OF COURT TO ASSIGN DISTRICT COURT JUDGE<br><br>OBJECTIONS, IF ANY, DUE WITHIN THIRTY DAYS |

# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

Allan Fletcher ("Plaintiff"), who is currently housed at the Department of State Hospitals, Coalinga pursuant to California's Sexually Violent Predator Act, is proceeding *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983. Before the Court are Plaintiff's request for judicial notice and Defendants Stephanie Clendenin and Brand Price's ("Defendants") motion to dismiss the Sixth Amendment and Fourteenth Amendment claims. For the reasons described below, the undersigned will recommend granting in part and denying in part Plaintiff's request for judicial notice and granting in part and denying in part Defendants' motion to dismiss.

**I.   BACKGROUND**

Plaintiff filed the complaint commencing this action on September 9, 2022. (ECF No. 1.) On January 26, 2023, the Court issued a screening order, allowing the complaint to proceed on

Plaintiff's First, Sixth, and Fourteenth Amendment claims regarding legal mail against Defendants Clendenin, Price, and Carter. (ECF No. 6.)

On April 28, 2023, Defendants Clendenin and Price filed the instant motion to dismiss the Sixth and Fourteenth Amendment claims. (ECF No. 12.) On May 12, 2023, Plaintiff filed an opposition and request for judicial notice. (ECF No. 14.) On May 22, 2023, Defendants filed a reply in support of the motion to dismiss. (ECF No. 15.) That same day, Defendants also filed objections to Plaintiff's request for judicial notice. (ECF No. 16.) On May 30, 2023, Plaintiff filed a response to Defendants' objections. (ECF No. 18.)

## II.     SUMMARY OF PLAINTIFF'S COMPLAINT

Plaintiff alleges as follows in his complaint:

The incidents occurred at Department of State Hospitals, Coalinga ("DSH, Coalinga"). As defendants, Plaintiff names Stephanie Clendenin, the Director of the California Department of State Hospitals, and Brandon Price, the Executive Director of DSH, Coalinga. Both are sued in their official capacity only. Plaintiff also appears to sue Department of Police Services Chief Carter.[1]

On or about January 23, 2012, Plaintiff arrived at DSH, Coalinga pursuant to California's Sexually Violent Predator Act ("SVPA"). Plaintiff is aware that he has a right to confidential case discussions with his attorney, which includes written correspondence. Plaintiff was educated on the meaning of "Non-LPS Patients' Rights." Plaintiff was informed that a Non-LPS patient means that his placement in or commitment to the facility is pursuant to statutory authority other than individuals committed under Welfare and Institutions Code section 5000. Plaintiff was informed that even though he is a civil detainee patient, he is housed with Penal Code mental health patients.

The Department of State Hospitals ("DSH") was formerly known as the Department of Mental Health ("DMH"), and in 2003 was sued for violating the Federal Civil Rights of Institutionalized Persons Act. DSH entered into a consent degree in 2006 to correct the civil

---

[1] Carter is not listed as a defendant in Plaintiff's complaint, but Plaintiff repeatedly refers to Carter as a defendant. As noted in the Court's screening order, (ECF No. 6 at 3 n.2), the Court will treat Carter as a defendant in this action.

2

1  rights violations noted throughout the other four state hospitals. One such violation was for
2  opening privileged legal mail outside of the patients' presence.

3        In or about May of 2022, a member of the DSH, Coalinga patient government was
4  informed by a peer that Unit 1 staff were opening patients' mail prior to delivery. Plaintiff spoke
5  to the Unit Shift Lead Psychiatric Technician, and she informed Plaintiff that she was instructed
6  by the Unit Supervisor to open and inspect greeting cards for contraband prior to delivery to
7  patients. Department of Police Services ("DPS") was called by the patient whose mail was
8  opened outside of his presence, and Plaintiff addressed the issue with DPS. DPS Officers then
9  stated: "I will speak to the Shift Lead, however, I'm aware that as of last month unit staff were
10 doing this. This did not come from us."

11       In or about June of 2022, Plaintiff received from his attorney of record, a Deputy Public
12 Defender in Alameda County, a clearly marked attorney-client legal mail envelope. Upon
13 receiving the envelope from staff, Plaintiff noticed that it had been opened and resealed with a
14 small piece of scotch tape. Plaintiff called his attorney and was able to confirm that his attorney
15 did not place the tape on the envelope. Plaintiff filed a Patients' Right Complaint.

16       In or about August of 2022, Plaintiff received a phone call from a DSH, Coalinga
17 Patients' Rights Advocate who stated that his office had been made aware of DSH, Coalinga
18 staff opening confidential legal mail at the direction of "Defendants Clendenin et al."

19       In or about July of 2022 through August of 2022, Plaintiff received from his attorney of
20 record and "through" the California Deputy Attorneys General confidential legal
21 correspondence. These envelopes were opened and resealed before being given to Plaintiff.
22 Additionally, in August of 2022, Plaintiff received an order granting an extension of time in a
23 case that he filed. It was open when Plaintiff received it.

24       As a result of Plaintiff's legal correspondence from his attorney of record being opened
25 outside of his presence, Plaintiff received a response from a Patients' Rights Advocate. The
26 Advocate stated: "My office has been made aware of Defendants opening, by way of their
27 policy, confidential legal mail." The Advocate explained that, in or about April or May of 2022,
28 Defendant Price authorized DPS Officers to implement a "pilot program" to intercept, open,

inspect, and if need be, to "photocopy the contents" of correspondence of select DSH, Coalinga patients that had been placed on a list. The mail was then resealed and delivered to the mail room at DSH, Coalinga, where it was processed for regular delivery to the patients' units. The Advocate stated that he was told by the hospital's administration that Defendant Price and DPS are permitted to implement this "pilot program" and intercept, open, and photocopy legal mail pursuant to California Code of Regulation, Title 9, § 884(b)(6), and the policy outlined in Administrative Directive No. 624 signed by Defendant Price.

The Advocate further stated that DSH, Coalinga administration cited the following from Administrative Directive No. 624 in support of its pilot program: "DSH-C must adhere to the legal prohibition not to read Non-LPS individual patients' letters, and documents sent or received from attorneys, courts, or government officials through the mail (CCR, Title 9, §§ 884 (b)(6) and 881 (c)). Such legal prohibition is consistent with the legal obligation to open, and inspect mail and packages for contraband (i.e. the facility must open and inspect each mail, package, but need to refrain from reading any letters or documents found therein that constitute confidential mail." (ECF No. 1 at 12 (errors in original) (emphasis added by Plaintiff).)[2]

The Advocate further informed Plaintiff that defendant Price was informed that the current pilot program may violate patients' rights because the program permits all privileged mail to be opened, inspected, and photocopied outside of the presence of patients. He then added that this may subject the hospital to liability.

Plaintiff further alleges that the word "mail" was recently added throughout the "Waiver Form for Patients' Packages." This is a violation of Plaintiff's rights in that it does not provide an exemption for confidential legal mail, which must be opened and inspected in the patients' presence.

The policy, practice, and custom at DSH, Coalinga when making changes affecting the rights, benefits, and/or privileges of civil detainees at DSH, Coalinga has been to involve Patients' Rights and Patients' Government (the Civil Detainee Advisory Counsel). In or about August of 2022, Plaintiff was given the newly revised Waiver Form for Patients' Packages,

---

[2] Page numbers refer to the ECF page numbers stamped at the top of the page.

which had not undergone the vetting process described above, nor had it been properly promulgated through the Office of Administrative Law pursuant to the Administrative Procedure Act mandate requirements.[3] Plaintiff attempted to have the word "mail" removed from the Form, but his requested change was rejected by DPS Officers.

Plaintiff believes that prisoners from the California Department of Corrections and Rehabilitation that are receiving mental health treatment at DSH, Coalinga have their legal mail opened and inspected in their presence, which is contrary to the policy for civil detainees like Plaintiff, who are denied this right.

Administrative Directive NO. 624 also states that "Non-LPS individual patients have the right to receive and send mail and packages, <u>but no right to receive unopend</u> [sic] <u>mail and packages, as such mail and packages are required to be searched for contraband</u>."

In order to remedy the opening of confidential legal mail outside of patients' presence, Plaintiff contacted the Civil Detainee Advisory Counsel ("CDAC"). During the CDAC meeting with DPS Sergeant Barazza,[4] Barazza claimed that he added the word "Mail" to the Package Waiver Form. He then directed his staff to send the new Form to all DSH, Coalinga Units with instructions that the Form be completed and returned no later than the end of August 2022.

Due to numerous complaints, a CDAC spokesperson brought the concerns with mail to Defendants Price and Carter. The altered Form was addressed, and both claimed they did not authorize Barazza to alter the Form. However, neither remedied the issue. Instead, Defendant Price directed that the matter be referred to the Legal Division at DSH, Coalinga for review, and the issue was tabled without resolution.

As a direct result of Defendant Price's failure to remedy the issue of the Form, Plaintiff had attorney/client mail deferred to the package room, where it was opened outside his presence and then brought to Plaintiff's housing unit.

Plaintiff alleges that Defendants violated his constitutional right to send and receive privileged correspondence through the United States Mail. Defendant Clendenin issued a

---

[3] Plaintiff does not bring a claim pursuant to the Administrative Procedure Act.
[4] Barazza is not a defendant in this action.

1  directive to Defendant Price to start a "Pilot Program" with DPS that unlawfully opens, inspects,
2  copies, and reads all incoming and outgoing mail. Defendant Price subsequently directed
3  Defendant Carter to utilize DPS staff to open, inspect, read, and copy incoming and outgoing
4  mail, and to flag certain patients' names, including Plaintiff, for possible illegal activity.
5  Defendants were informed by a Patients' Rights Advocate that their current practices violate
6  Plaintiff's right to confidentiality, but Defendants continue to implement those practices.
7         Defendants also violated Plaintiff's civil rights when they proclaimed that they may open
8  outgoing privileged mail outside of Plaintiff's presence after Plaintiff sealed it.
9         Plaintiff asserts that California Code of Regulation, Title 9, § 884(b)(6) violates the Due
10 Process Clause of the Fourteenth Amendment because Defendants cited as authority and
11 referenced a promulgated regulation that is used for Penal Code mental health patients and not
12 civil detainees, like Plaintiff. This regulation also limits the volume of privileged legal mail that
13 Plaintiff can send and/or receive.
14         Plaintiff alleges that Defendants violated his First and Sixth amendment rights when they
15 promulgated rules and regulations that allow DPS Officers and other employees to open
16 privileged attorney/client correspondence outside of Plaintiff's presence. These actions have
17 chilled attorney/client communication.
18         Plaintiff also alleges that Defendants violated the Fourteenth Amendment of the
19 Constitution because California Code of Regulation, Title 9 § 884 (b)(6) denies rights to Plaintiff
20 that are afforded to California Department of Corrections and Rehabilitation ("CDCR") inmates
21 housed at DSH, Coalinga. These inmates, as well as CDCR prisoners and inmates in county jail,
22 are permitted to receive unopened confidential legal mail that is opened and inspected in their
23 presence. However, Plaintiff's legal mail is opened outside of his presence. Plaintiff is thus
24 placed in conditions of confinement that are more restrictive than those applied to inmates in
25 county jails, prisoners held in prison for punishment, and Penal Code LPS patients at DSH's
26 other hospitals.
27 ///
28 ///

### III.  REQUEST FOR JUDICIAL NOTICE

Plaintiff requests that the Court take judicial notice of: (1) DSH, Coalinga Administrative Directive No. 624 regarding patient mail and packages; (2) March 22, 2011 certification of Cynthia A. Radavsky, Deputy Director of Long Term Care Services, California Department of Mental Health, that the DMH "will not use, enforce, or attempt to enforce the challenged Internal Management Directive No. 624 that was issued on October 12, 2010"; (3) patients' rights complaints and responses by DMH officials; and (4) July 1, 2002 letter from Latham & Watkins to DMH's Office of Regulations regarding comments on Proposed "Chapter 4.5: Patients' Rights and Related Procedures for Non-L.P.S. Act Patients In Department of Mental Health Facilities." (ECF No. 14 at 2.) Defendants do not object to the Court taking judicial notice of Administrative Directive No. 624. (ECF No. 16 at 2.) Defendants object to the Court taking judicial notice of the three other exhibits. (Id. at 2–3.)

"The Court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Courts "may take judicial notice of court filings and other matters of public record." Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006). "But a court cannot take judicial notice of disputed facts contained in such public records." Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 999 (9th Cir. 2018) (citing Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001)). "Just because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth." Khoja, 899 F.3d at 999.

Here, Defendants do not object to the Court taking judicial notice of Administrative Directive No. 624. (ECF No. 16 at 2.) As the directive is a public record, the Court will recommend that judicial notice be taken of Administrative Directive No. 624.

With respect to the remaining three exhibits, the undersigned will recommend that Plaintiff's request for judicial notice be denied because "a court cannot take judicial notice of disputed facts contained in such public records," Khoja, 899 F.3d at 999.

## IV. MOTION TO DISMISS

### A. Legal Standard

In considering a motion to dismiss, the Court must accept all allegations of material fact in the complaint as true. Erickson v. Pardus, 551 U.S. 89, 93–94 (2007); Hosp. Bldg. Co. v. Rex Hosp. Trustees, 425 U.S. 738, 740 (1976). The Court must also construe the alleged facts in the light most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), abrogated on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir.1994) (per curiam). All ambiguities or doubts must also be resolved in the plaintiff's favor. See Jenkins v. McKeithen, 395 U.S. 411, 421 (1969). In addition, *pro se* pleadings "must be held to less stringent standards than formal pleadings drafted by lawyers." Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010).

A motion to dismiss pursuant to Rule 12(b)(6) operates to test the sufficiency of the complaint. See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer, 416 U.S. at 236.

The first step in testing the sufficiency of the complaint is to identify any conclusory allegations. Iqbal, 556 U.S. at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678 (citing Twombly, 550 U.S. at 555). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations and quotation marks omitted).

After assuming the veracity of all well-pleaded factual allegations, the second step is for the court to determine whether the complaint pleads "a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556) (rejecting the traditional 12(b)(6) standard set forth in Conley, 355 U.S. at 45–46). A claim is facially plausible when the plaintiff

"pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). The standard for plausibility is not akin to a "probability requirement," but it requires "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief … [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679.

In deciding a Rule 12(b)(6) motion, the Court generally may not consider materials outside the complaint and pleadings. Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998); Gumataotao v. Dir. of Dep't of Revenue & Taxation, 236 F.3d 1077, 1083 (9th Cir. 2001).

### B. Discussion

#### 1. Sixth Amendment

In Nordstrom v. Ryan, 762 F.3d 903 (9th Cir. 2014), an inmate alleged "that when he sought to send a confidential letter—'legal mail'—to his lawyer, a prison guard actually *read* the letter, instead of merely scanning and inspecting the letter for contraband." Id. at 906. The Ninth Circuit found that the claims fell "squarely within the scope of the Sixth Amendment right to counsel," because "Nordstrom allege[d] that the defendants' conduct interfered with attorney-client communications related to the appeal of his murder conviction and death sentence." Id. at 909. The Ninth Circuit "recognized that prisoners have a Sixth Amendment right to confer privately with counsel and that the practice of opening legal mail in the prisoner's presence is specifically designed to protect that right" and "clarif[ied] that, under Nordstrom, prisoners have a Sixth Amendment right to be present when legal mail related to a criminal matter is inspected." Mangiaracina v. Penzone, 849 F.3d 1191, 1196 (9th Cir. 2017).

Defendants argue that because "Plaintiff is detained civilly, not criminally, the Sixth Amendment does not apply." (ECF No. 12 at 7.) Plaintiff contends that "Ninth Circuit setting precedence affirmed that where specific standards are lacking, courts may consider decisions defining the constitutional rights of *prisoners* to establish a constitutional minimum for the rights of civil detainees." (ECF No. 14 at 5 (citing Padilla v. Yoo, 678 F.3d 748, 749 (9th Cir. 2012); Hydrick v. Hunter, 500 F.3d 978, 989 (9th Cir. 2007)).)

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense." U.S. Const. amend. VI. "The protections provided by the Sixth Amendment are explicitly confined to 'criminal prosecutions,'" Austin v. United States, 509 U.S. 602, 608 (1993), and "the fact that a proceeding will result in loss of liberty does not ipso facto mean that the proceeding is a 'criminal prosecution' for purposes of the Sixth Amendment." Middendorf v. Henry, 425 U.S. 25, 37 (1976). For example, although the Ninth Circuit "recognize[s] that involuntary civil commitment 'constitutes a significant deprivation of liberty that requires due process protection[,]' . . . the Sixth Amendment right to confrontation does not attach in civil commitment proceedings." Carty v. Nelson, 426 F.3d 1064, 1073 (9th Cir.) (quoting Addington v. Texas, 441 U.S. 418, 425 (1979)), amended on denial of reh'g, 431 F.3d 1185 (9th Cir. 2005). See Burns v. Price, No. LACV 21-6823-AB (LAL), 2022 WL 2056770, at *5 (C.D. Cal. Feb. 24, 2022) ("As an initial matter, it is not apparent that clearly established federal law contemplates a Sixth Amendment right to counsel at a civil commitment trial."), report and recommendation adopted, 2022 WL 2047939 (C.D. Cal. June 7, 2022); Samuels v. Ahlin, No. 1:10-cv-00585-DAD-EPG-PC, 2017 WL 6594635, at *6 (E.D. Cal. Dec. 26, 2017), ("Here, Plaintiff cannot state a claim for violation of his Sixth Amendment right to the effective assistance of counsel, because the Sixth Amendment is not applicable to a civil commitment proceeding."), report and recommendation adopted, 2018 WL 497228 (E.D. Cal. Jan. 22, 2018).

The Ninth Circuit has acknowledged that "it may sometimes be permissible to rely on cases involving one type of detainee to establish clearly established constitutional rights of another type of detainee." Padilla v. Yoo, 678 F.3d 748, 759 (9th Cir. 2012).

> In *Hydrick*,[5] for example, we held that court decisions defining the constitutional rights of prisoners could be relied upon to establish a floor for the clearly established constitutional rights of persons who are civilly detained as sexually violent predators, for whom the law was at that time "still evolving." 500 F.3d at 989. Central to our holding, however, was the Supreme Court's earlier statement that "civilly detained persons must be afforded 'more

---

[5] Hydrick v. Hunter, 500 F.3d 978 (9th Cir. 2007), vacated and remanded on other grounds, 556 U.S. 1256 (2009).

10

> considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish.' " *Id.* (quoting *Youngberg,* 457 U.S. at 322, 102 S.Ct. 2452).

Padilla, 678 F.3d at 759 (footnote added). However, Padilla and Youngberg did not involve Sixth Amendment claims. Moreover, in Hydrick, the Ninth Circuit noted that civilly committed persons awaiting commitment pursuant to the SVPA "have a *statutory* right to counsel in probable cause proceedings and in commitment hearings," and distinguished "the Sixth Amendment, [which] by its express language, protects those in criminal proceedings." Hydrick, 500 F.3d at 999 (emphasis added).

Nordstrom and Mangiaracina concerned legal mail related to criminal matters. Here, however, Plaintiff is an SVPA civil detainee. SVPA detainees have a *statutory* right to counsel, Hydrick, 500 F.3d at 999, and although "involuntary civil commitment 'constitutes a significant deprivation of liberty that requires due process protection,'" Carty, 426 F.3d at 1073, "the fact that a proceeding will result in loss of liberty does not ipso facto mean that the proceeding is a 'criminal prosecution' for purposes of the Sixth Amendment," Middendorf, 425 U.S. at 37. Accordingly, the Sixth Amendment is not applicable, Defendants' motion to dismiss should be granted with respect to the Sixth Amendment claim, and the Sixth Amendment claim should be dismissed with prejudice.[6]

### 2. Fourteenth Amendment

"Persons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." Youngberg v. Romeo, 457 U.S. 307, 321–22 (1982) (citing Estelle v. Gamble, 429 U.S. 97, 104 (1976)).

> We held in *Jones*[7] that individuals who are civilly detained pending commitment proceedings under the SVPA are "entitled to

---

[6] "In dismissing for failure to state a claim, 'a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" Creech v. Tewalt, 84 F.4th 777, 787–88 (9th Cir. 2023) (citations omitted). Here, the Court finds that amendment of the Sixth Amendment claim would be futile. See Bonin v. Calderon, 59 F.3d 815, 845 (9th Cir. 1995) ("Futility of amendment can, by itself, justify the denial of a motion for leave to amend.").

[7] Jones v. Blanas, 393 F.3d 918 (9th Cir. 2004).

> protections at least as great as those afforded to a civilly committed individual[.]" *Id. Jones* established two presumptions: First, conditions of confinement are presumptively punitive if they are "identical to, similar to, or more restrictive than, those in which [a civil pre-trial detainee's] criminal counterparts are held." *Id.*; *see also Youngberg v. Romeo*, 457 U.S. 307, 321–22, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982) (requiring civil detainees be given "more considerate treatment" than criminal detainees). Second, conditions of confinement are presumptively punitive if "an individual awaiting SVPA adjudication is detained under conditions more restrictive than those the individual would face following SVPA commitment." *Jones*, 393 F.3d at 933. If either presumption applies, the burden shifts to the defendant to show (1) "legitimate, non-punitive interests justifying the conditions of [the detainee's] confinement" and (2) "that the restrictions imposed ... [are] not 'excessive' in relation to these interests." *Id.* at 935.

King v. Cnty. of Los Angeles, 885 F.3d 548, 557 (9th Cir. 2018) (footnote added).[8]

Whether Plaintiff can establish that the promulgated rules, regulations, and policies applied to Plaintiff are similar to or more restrictive than regulations governing his criminal counterparts and whether Defendants can rebut any presumption arising therefrom are issues better suited for resolution at a later stage of the proceedings, such as summary judgment. See Saint-Martin v. Price, No. 1:18-cv-00123-DAD, 2018 WL 2716907, at *6 n.7 (E.D. Cal. June 6, 2018). Accordingly, Defendants' motion to dismiss should be denied with respect to the Fourteenth Amendment claim.

## V.     CONCLUSION

Based on the foregoing, the undersigned HEREBY RECOMMENDS that:

1. Plaintiff's request for judicial notice (ECF No. 14) be GRANTED IN PART AND DENIED IN PART;

2. Defendants' motion to dismiss (ECF No. 12) be GRANTED IN PART AND

---

[8] Here, it is unclear whether Plaintiff is awaiting SVPA adjudication or has been committed following SVPA adjudication. In the complaint, Plaintiff states that he "is a civil detainee pursuant to Welfare and Institutions Code section 6602, *non-adjudicated* Sexually Violent Predator." (ECF No. 1 at 8 (emphasis added).) Regardless, for purposes of this motion to dismiss, it appears that whether Plaintiff is awaiting SVPA adjudication or has been committed following SVPA adjudication is a distinction that is not relevant given that Defendants argue in their reply that "[t]o the extent that Plaintiff's Due Process claim is based on him being subject to conditions more restrictive than individuals detained under criminal codes, his claim also fails" because "[c]ivilly detained individuals can be subject to restrictions that have a legitimate, non-punitive government purpose and that do not appear to be excessive in relation to that purpose," (ECF No. 15 at 3), mirroring the test set forth in Jones.

DENIED IN PART; and

3. Plaintiff's Sixth Amendment claim be DISMISSED with prejudice.

Further, the Court DIRECTS the Clerk of Court to assign a District Court Judge to the present matter.

These Findings and Recommendations will be submitted to the United States District Court Judge assigned to this action pursuant to the provisions of 28 U.S.C. § 636 (b)(1). Within **THIRTY (30) days** after being served with a copy of these Findings and Recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within **FOURTEEN (14) days** after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **January 25, 2024**                    /s/ Erica P. Grosjean
                                                  UNITED STATES MAGISTRATE JUDGE

13